**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: September 28 2017

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: ) | Case No. 16-33151 |
| Harold Leroy Rooks ) | Chapter 7 |
| Jill Rooks, ) | |
| Debtor(s). ) | Adv. Pro. No. 17-03007 |
| Johnstone Supply of Detroit, ) | Judge John P. Gustafson |
| Plaintiff(s), ) | |
| v. ) | |
| Harold Leroy Rooks ) | |
| Jill Rooks, ) | |
| Defendant(s). ) | |

### MEMORANDUM OPINION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

This adversary proceeding is before the Court on Defendants Harold Leroy Rooks and Jill Rooks' ("Defendants") Motion to Dismiss Complaint ("Motion") pursuant to Rule 12(b)(6), made

applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012.[1] [Doc. #34]. Plaintiff Johnstone Supply of Detroit ("Plaintiff" or "Johnstone") filed a "Response in Opposition to Defendants' Motion to Dismiss" ("Response"). [Doc. #35]. A "Reply in Further Support of Defendants' Motion to Dismiss Complaint" was submitted ("Reply"). [Doc. #36]. This was followed by Plaintiff's "Supplement to Its Opposition to Defendants' Motion to Dismiss" ("Supplement"). [Doc. #37].

In its "2nd Amended Adversary Complaint" ("Complaint") [Doc. # 25], Plaintiff alleges that Defendants/Debtors, who "have been in business as contractors operating under the name 'Indoor Comfort Systems LLC. . . applied for a credit account" with Plaintiff. [Doc. # 25, ¶ 1]. The Complaint further alleges that Defendants "fail[ed]. . . to give any notice of any kind to [Plaintiff] that they were insolvent when they first applied for [a credit account]. . . ." [*Id.*, ¶ 4]. Plaintiff asserts that the debt owed to it arose "out of the frauds and defalcation committed by [Defendants]" [*Id.*, ¶ 8A], and as such, Defendants' debt owed to Plaintiff "in the total sum of $7,812.39, plus late charges" [*Id.*, ¶8B] should be excepted from Defendants/Debtors' discharge pursuant to 11 U.S.C. § "523 (a)(2)(4) and (c)."[2] [*Id.*, ¶ 6].

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1) and (b)(2)(I).

For the reasons that follow, the court will grant Defendants' Motion to Dismiss in part and deny Defendants' Motion to Dismiss in part.

## BACKGROUND

Defendants filed their chapter 7 petition on October 5, 2016. [Case No. 16-33151, Doc. # 1].

---

[1]/ Hereinafter references to the Federal Rules of Civil Procedure will appear as "Civil Rule ___" and reference to the Federal Rules of Bankruptcy Procedure will appear as "Bankruptcy Rule ___."

[2]/ The court notes that the Bankruptcy Code does not contain a Section "523(a)(2)(4) and (c)". It appears that Plaintiff is relying upon 11 U.S.C. §§ 523(a)(2) and (a)(4).

Their petition reflects that Harold Leroy Rooks ("Mr. Rooks") is self-employed and doing business as Indoor Comfort Systems, LLC. [*Id.,* p. 2, 29] and that Jill Rooks ("Mrs. Rooks") is retired. [*Id.*]. Defendants' Statement of Financial Affairs shows that Mrs. Rooks had no earned income in 2013, 2014, and 2015, [Case No. 16-33151, Doc. # 1, p. 34-35], and her income has been limited to social security benefits. [*Id.*]. Defendants' address is on Whiteacre Rd. in Toledo, OH.

Indoor Comfort Systems, LLC ("Indoor Comfort") filed a chapter 7 petition on October 7, 2016, in case number 16-33192. [Case No. 16-33192, Doc. # 1]. According to Defendants' SOFA, the nature of the business Mr. Rooks conducted as Indoor Comfort was "[i]nstalling A/C units & [f]urnaces". [Case No. 16-33151, Doc. # 1, p. 39]. Indoor Comfort's principal place of business was located at 3359 Silica Rd., Sylvania, Ohio. [Case No. 16-33192, Doc. # 1, p. 1]. Mr. Rooks is the 100% owner and sole member of Indoor Comfort. [*Id.*, p. 4-5, 29]. Indoor Comfort's only bank account was with Waterford Bank, which is located in Ohio. [*Id.*, p. 7, 17].

The Complaint states that Plaintiff is "a corporate assumed name of Chester Limited, Inc. a Michigan Corporation." The Complaint does not allege where its primary place of business is located nor where it did business with Defendants. The credit application attached to the Complaint reflects that Indoor Comfort, when asked "[w]hich store(s) have/will you be doing most of your business with?", checked the box indicating that it would be doing business at Plaintiff's "Toledo, OH" location. [Doc. # 25, Pl. Ex. 1, p. 5]. On page 3 of the credit application, Mr. and Mrs. Rooks each signed the section of the application that stated Plaintiff could "enforce this agreement in any venue in the state of Michigan." [*Id.*, Pl. Ex. 1, p. 7].

The Complaint alleges that Defendants prepared an application form for credit on June 6, 2016, by which the Defendant/Debtors, as opposed to Indoor Comfort, "applied for a credit account under which they would be permitted to charge purchases and pay for them . . . ." [*Id.*, ¶ 1]. The credit application reflects an applicant with a "Business Name" of Indoor Comfort System LLC, owned by Harold L. Rooks, with Harold L. Rooks listed as an authorized buyer. [Doc. # 25, Pl. Ex. 1, p. 5-7]. The Complaint further alleges that after Plaintiff granted Defendants' request for a credit account, Defendants purchased certain items through said account, and that Defendant/Debtors failed to provide notice to Plaintiff, either at the time the application was signed or when items were purchased through the account, that they were insolvent. [*Id.*, ¶¶ 2-4].

Aside from a "Bank Reference", which required Defendants to provide Plaintiff with a bank

3

name, account number, phone number, and address, it does not appear that the credit application requested any financial information from Defendant/Debtors, and it does not appear that Defendant/Debtors made any representations in the application regarding their financial condition. [*Id.*, Pl. Ex. 1, p. 5-8]. The "Individual Personal Guarantee" section of the credit application was signed only by Mr. Rooks. [*Id.*, Pl. Ex. 1, p. 8].

The Complaint asserts that "on information and belief"[3] Defendants "executed contractors' sworn statements and/or waivers of lien knowing that they were false and failed to indicated [sic] Johnstone as supplier or . . .did claim that Johnstone had been paid." [Doc. # 1, ¶ 5].

Plaintiff did not provide any details in the Complaint regarding which representations made by Defendant/Debtors, if any, were false at they time they were made. Nor did Plaintiff's Complaint provide any specifics regarding the alleged sworn statements and/or waivers of liens.

## LAW AND ANALYSIS

### I. The Legal Standards For Dismissal Pursuant To Civil Rule 12(b)(6).

A motion brought by a defendant to dismiss an adversary proceeding is governed by Civil Rule 12(b), made applicable to this proceeding by Bankruptcy Rule 7012(b). Civil Rule 12(b) enumerates seven separate grounds upon which a motion to dismiss may be based.

Defendants' Motion to Dismiss is based upon their assertion that Plaintiff's Complaint fails to state a claim upon which relief could be granted under Sections 523(a)(2) and (a)(4) of the Bankruptcy Code. [Doc. # 34, p. 4-6].

Civil Rule 12(b)(6) provides that a court may dismiss a pleading for a "failure to state a claim upon which relief can be granted[.]" In considering a motion to dismiss under Rule 12(b)(6), the court must assume as true all the well-pleaded facts in the complaint and view them in a light most

---

[3]/ Pleading based upon "information and belief" in the Sixth Circuit is the subject of some judicial debate. Two published circuit court decisions appear to be, at least, hostile to the concept of using "information and belief" pleading to meet the *Iqbal/Twombly* standards to avoid dismissal. *See*, *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,727 F.3d 502 (6th Cir. 2013); *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*,756 F.3d 917, 931 (6th Cir. 2014). There are subsequent District Court decisions that have not dismissed complaints, even though some elements were pled based, at least in part, upon "information and belief". *See* e.g., *Evans v. Armenta*, 134 F.Supp.3d 1052, 1058 - 1060 (E.D. Ky. 2015); *Cap City Dental Lab, LLC v. Ladd*, 2016 U.S. Dist. LEXIS 118570 at *15 - *18 (S.D. Ohio Sept. 1, 2016). Although the Sixth Circuit did not expressly adopt it, the concept that "information and belief" pleading might be sufficient where "the facts are peculiarly within the possession of the defendant" was not rejected in *Darvocet*, 756 F.3d at 931, *citing*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

favorable to the plaintiff, with any ambiguities being resolved in the plaintiff's favor. *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

However, "a legal conclusion couched as a factual allegation" need not be accepted as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also, Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Nor is the court required to "accept as true . . . unwarranted factual inferences." *Jones v. City of Cincinnati*, 521 F.3d at 559; *Directv, Inc. v. Treesh*, 487 F.3d at 476.

"The purpose of a Rule 12(b)(6) motion is to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Campbell v. Nationstar Mortgage*, 611 Fed.Appx. 288, 291 (6th Cir.2015)(internal quotations omitted). As the Sixth Circuit Court of Appeals has noted:

> Civil Rule 8(a)(2) says that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A pair of Supreme Court decisions—*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)—confirms that this rule imposes legal *and* factual demands on the authors of complaints.

*16630 Southfield Ltd. Partnership v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir.2013)(emphasis in original).

The issue in a 12(b)(6) motion is, therefore, not whether the plaintiff is entitled to prevail, but whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct.

5

1955, 1960, 167 L.Ed.2d 929 (2007).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In deciding a motion to dismiss pursuant to Civil Rule 12(b)(6), this court "may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 Moore's Federal Practice ¶ 12.34[2] at 92.1 (3d ed. 2017); *see also, New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *Shirk v. JPMorgan Chase Bank, N.A. (In re Shirk)*, 437 B.R. 592, 596 n.1 (Bankr. S.D. Ohio 2010).

The Supreme Court directed lower courts to apply a two-step analysis in deciding the sufficiency of pleadings:

> First, a court should identify and reject legal conclusions unsupported by factual allegations, because conclusions masquerading as allegations "are not entitled to the assumption of truth." *Id*.[5] at 1950. Insufficient are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," "labels and conclusions," and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949. In sum, a complaint that alleges that a defendant caused a plaintiff's injury, without explaining how, does not meet the requirements of FRCP 8(a) and therefore cannot survive a FRCP 12(b)(6) motion. Second, a court should assume the veracity of "well-pleaded factual allegations" and should conduct a "context-specific" analysis that "draw[s] on [the court's] judicial experience and common sense" to determine whether the allegations "plausibly give rise to an entitlement to relief." *Id*. at 1950. Well-pleaded facts that "do not permit the court to infer more than the mere possibility of misconduct" are insufficient to show that plaintiff is entitled to relief. *Id* .

*Antioch Co. Litig. Trust v. Morgan (In re Antioch Co.)*, 451 B.R. 810, 813 (Bankr. S.D. Ohio 2011)(footnote added to clarify citations to *Iqbal*).

---

[4]/ Initially, some courts had interpreted *Twombly* as only appling to antitrust cases, or was otherwise limited.  *Iqbal*'s holding makes it clear that *Twombly*, and its "plausibility standard" is a rule of general application.

[5]/  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).

Defendants points to the following deficiencies in Plaintiff's Complaint[6] in moving for dismissal: 1) there is no cause of action for non-dischageability under 11 U.S.C. Section 523(a)(2) for the alleged failure to disclose insolvency [Doc. #25, p. 2, ¶¶ 2, 4]; 2) the pleadings alleging fraud do not meet the requirements of Civil Rule 9(b)[7] requiring that the complaint must "state with particularity the circumstances constituting fraud"; 3) any cause of action based on Section 523(a)(2)(c) should be dismissed because the debts in issue are not consumer debts; and, 4) there are insufficient factual allegations (or documentation) to prevent dismissal of the Complaint's assertion that the debts are non-dischargeable based upon the Debtors acting in a fiduciary capacity.

## II. Plaintiff's Arguments Based On Allowing Time For Discovery.

The Plaintiff also argues that dismissal under Civil Rule 12(b)(6) is not appropriate because there has not been time to conduct discovery. This argument must be rejected for two reasons. First, there is at least a limited opportunity for creditors to question debtors at the First Meeting of Creditors. *See*, 11 U.S.C. §341. A creditor may also examine a debtor using a Bankruptcy Rule 2004 examination, and under Bankruptcy Rule 2004© that examination can include requests for production of documents. If cause is shown, the time for filing a complaint to determine dischargeability can be extended. *See*, Bankruptcy Rule 4007©.

Moreover, the pleading standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. The case law makes it clear that the purpose of the heightened pleading standards, both of *Iqbal* and Civil Rule 9(b), is to protect a defendant from the burdens of discovery. *See*, *Lister v. Bank of America, N.A.*, 790 F.3d 20, 23-24 (1st Cir. 2015)("[A]ppellants argue that discovery is needed to allow them to uncover facts to support their claims. In so doing, however, they ignore the fundamental premise of Rule 12(b)(6), *i.e.*, that the *plaintiff* must set forth sufficient factual matter to state a claim for relief that is plausible on its face.")(emphasis in original); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)("In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless

---

[6]/ Because of redaction/docketing issues, the "Complaint" referred to in this decision is the Second Amended Complaint With Redactions. [Doc. #25].

[7]/ Civil Rule 9(b) is made applicable in adversary proceedings by Bankruptcy Rule 7009.

fraud claims sooner than later.").

Courts have held that the requirements of Civil Rule 9(b)[8] "may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party—in other words, Rule 9(b) does not require a plaintiff to be omniscient." *Allen v. Andersen Windows, Inc.*, 913 F.Supp.3d 490, 498 - 499 (Bankr. S.D. Ohio 2012). However, even without the application of Civil Rule 9(b), the pleadings in issue here do not, for the most part, meet the generally applicable requirements of *Iqbal* and *Twombly*.

### III. The Complaint Fails to State any Claim Against Defendant Mrs. Rooks.

The Complaint fails to allege any basis under which Mrs. Rooks would be liable to Plaintiff on these debts. Before the Court can find that Plaintiff has stated any claims under sections 523(a)(2)(A), (a)(2)(B), or (a)(4) for nondischargeability, there first has to be a debt. While the Complaint alleges that "[t]he Debtors Rooks have been in the business as contractors operating under the name" of Indoor Comfort, there are no factual allegations regarding a guarantee, an ownership interest in Indoor Comfort, or Mrs. Rooks' involvement in the purchase of anything from Plaintiff. While information regarding Mrs. Rooks status as the spouse of Mr. Rooks in included in the credit application, Mrs. Rooks did not sign the section of the application comprising a personal guaranty. [Doc. # 25, Pl. Ex. 1, p. 6-8]. There were no allegations in the Complaint of an ownership interest in Indoor Comfort, or a basis for piercing the corporate veil. Nor is there any allegation that Mrs. Rooks actively participated in any purchase from Plaintiff.

Moreover, while the Complaint states that "the debtors applied for a credit account under which they would be permitted to charge purchases and pay for them per the terms contained in the application" - the Application attached to the Complaint states that the "Business Name" was "Indoor Comfort System[9] LLC", and the DBA was listed as "Indoor Comfort System LLC". [Doc.

---

[8]/ Although not applicable here, it should be noted that courts have also relaxed the requirements of Civil Rule 9(b) for trustees. *See e.g., In re Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 233 (Bankr. D. Del. 2015).

[9]/ The application is handwritten. It appears to the court that "System" rather than "Systems" was written. However, Plaintiff's invoices all reflect the correct name, "Indoor Comfort Systems".

#25, p. 5]. Plaintiff's invoices all list "Indoor Comfort Systems LL[10]" as the entity the goods were "SOLD TO". [Doc. #25, Pl. Ex. 2, p. 9 - 27]. Plaintiff's invoices have a box for listing "Ordered By". In every invoice submitted by Plaintiff the box is either blank, or reflects that the goods were ordered by "HAROLD ROOKS". [*Id.*]. Therefore, all claims against Mrs. Rooks will be dismissed pursuant to Civil Rule 12(b)(6).

**IV. 11 U.S.C. Section 523(a)(2) and the Failure To Disclose Insolvency.**

The court construes Plaintiff's Complaint as seeking a determination that certain debts owed to it by Mr. Rooks are nondischargeable under 11 U.S.C. §§523(a)(2) and (a)(4)[11]. Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010).

Section 523(a)(2) has two subparts, (A) and (B). Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services,... to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." For purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002)(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

In addition, the Supreme Court has held that § 523(a)(2)(A) also encompasses "actual fraud" as a separate standard for nondischargeability not requiring a misrepresentation. *Husky Int'l Elecs., Inc. v. Ritz,* – U.S. –,136 S. Ct. 1581, 1587 (2016); *see also Mellon Bank, N.A. v. Vitanovich*

---

[10]/ It appears that Plaintiff's form limited the number of characters, resulting in the "C" being left off of "LLC" on the invoice.

[11]/ Plaintiff's Complaint cites to Section "523 (a)(2)(4) and (c)". As the Bankruptcy Code does not contain a Section "523(a)(2)(4) and (c)", the court construes that Plaintiff is relying upon 11 U.S.C. §§ 523(a)(2) and (a)(4) as grounds for relief. Plaintiff cannot utilize § 523(a)(2)(c) as that subsection only applies to consumer transactions. *See e.g., In re Costantino,* 72 B.R. 189, 192 (Bankr. D.S.C. 1986); *In re Meyer*, 296 B.R. 849, 864-65 (Bankr. N.D. Ala. 2003).

9

*(In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001).

Under § 523(a)(2)(B), there is an exception to discharge of a debt "for money ... to the extent obtained by. . . use of a statement in writing—(I) that is materially false; (ii) respecting the debtor's ... financial condition; (iii) on which the creditor to whom the debtor is liable for such money. . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . . ." 11 U.S.C. § 523(a)(2)(B). The creditor bears the burden of proving each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654 (1991).

Subsections (A) and (B) are mutually exclusive, as all statements regarding a debtor's financial condition are expressly excluded from subsection (A). *See generally, Prim Capital Corp. v. May (In re May)*, 368 B.R. 85 (B.A.P. 6th Cir. 2007). Because the Complaint alleges that Defendant-Debtors were insolvent at the time they filled out their application for credit or when they were making purchases, and that these acts allegedly constitute fraud, the court will address this argument under Section 523(a)(2)(B), as these allegations pertain to the Debtors' financial condition and thus require a statement in writing for nondischargeability.

For purposes of the Motion to Dismiss, the court will assume that the Defendant, and/or his company, were insolvent at the time the application for credit was made. As one bankruptcy court has noted, the term "insolvent" is defined in the Bankruptcy Code as a "*financial condition* such that the sum of such entity's debts is greater than all of such entity's property . . . ." 11 U.S.C. §101(32)(A) (emphasis added). As the *Jackson* court stated:

> Therefore the Plaintiff's allegation that the Debtor knowingly failed to disclose the "insolvency" is a representation or omission "respecting the debtor's . . . or an insider's financial condition," a matter specifically excluded from the ambit of §523(a)(2)(A). Rather, the dischargeability of a debt obtained by such a representation or omission is determined instead in accordance with the more rigorous requirements of §523(a)(2)(B) (a statutory basis not cited by the Plaintiff for the relief sought in the Complaint) including the requirements, *inter alia*, of a "statement in writing", reasonable reliance, and "intent to deceive". Given the interplay of subsection (A) and (B) of §523(a)(2), the only statements regarding *financial condition* which are actionable under §523(a)(2) are statements made in writing. Non-written statements -- such as oral communications, or concealment -- regarding financial condition are simply not within the contemplation of §523(a)(2).

*Matson v. Jackson (In re Jackson)*, 2015 WL 5601308, at *4, 2015 Bankr. LEXIS 698, at **13-14 (Bankr. D. Conn. March 6, 2015)(emphasis in original, footnotes omitted); *see also*, *Pearson v.*

17-03007-jpg    Doc 39    FILED 09/28/17    ENTERED 09/28/17 15:40:00    Page 10 of 17

*Suiter (In re Suiter)*, 2016 WL 6783219, at *11, 2016 Bankr. LEXIS 3984, at **28-29 (Bankr. D. Hawai'i Nov. 15, 2016)("The allegation about Canaan Construction's insolvency and financial ability to perform the Pearson contract relate to Canaan Construction's "overall financial health" and are therefore statements about "an insider's financial condition." The complaint does not allege that Suiter made any such statement in writing. Therefore, I dismissed that portion of Count 118 without leave to amend.").

The majority of Circuit courts that have addressed the issue have held that mere insolvency is insufficient to establish fraud. *See*, *In re Anastas*, 94 F.3d 1280 (9th Cir); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986); *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986). And, when a plaintiff alleges in a complaint that a defendant failed to disclose insolvency, they are pleading fraud by omission. Civil Rule 9(b) states that when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." This is to ensure that a defendant is given enough information to defend in a meaningful and informed manner. *Advocacy Org. For Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999).

"At a minimum, the complaint must allege the time, place, and content of the alleged misrepresentation." *Harcourt v. Mallaley (In re Mallaley)*, 2008 Bankr. LEXIS 1098, at *2 (Bankr. S.D. Ohio 2008)(*citing*, *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005)). The *Mallaley* court further explained that Civil Rule 9(b) required a fraud by omission pleading to include the following: "(1) the information withheld; (2) the relationship giving rise to the duty to speak; and (3) the events triggering the duty to speak." *Mallaley*, 2008 Bankr. LEXIS 1098, at *3 (*citing, Randleman v. Fidelity Nat'l Title Ins. Co.,* 465 F. Supp. 2d 812, 822 (N.D. Ohio 2006); *American United Life Ins. Co. V. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal for failure to plead duty to disclose)).

Upon a review of the credit application, the court cannot find any request for information made by the Plaintiff concerning the Defendant's financial condition. Nor does the court's review reflect any materially false information given by the Defendant regarding his financial condition. The Complaint has not pleaded factual content that would allow the court to draw the reasonable inference that Defendant is liable for the misconduct alleged, and therefore, any claim brought pursuant to Section 523(a)(2)(B) regarding the credit application will be dismissed. Further, the complaint has not pleaded any legal relationship between Plaintiff and Defendant that would give

rise to a duty to disclose insolvency, or any events triggering such a duty to disclose. Therefore, the claims under Section 523(a)(2)(B) will be dismissed.

The Complaint also alleges that Defendant executed unidentified "contractors' sworn statements and/or waivers of lien knowing that they were false" [Doc. # 25, ¶ 5]. Because this allegation does not relate to Defendant's financial condition, the court will address this claim under section 523(a)(2)(A).

Section 523(a)(2)(A) prevents the discharge of a debt based on "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . ." The Sixth Circuit has held that to demonstrate nondischargeability under 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).

Aside from allegations regarding "sworn statements and/or waivers of lien", the Complaint does not contain any facts pled regarding the statements or waivers. Plaintiff does not allege that the sworn statements and/or waivers of liens were intended to deceive the creditor, nor does Plaintiff allege that it relied on said statements and/or waivers, or even that Plaintiff's loss was proximately caused by said reliance. Thus, Plaintiff's pleadings do not satisfy the Civil Rule 9(b)'s requirements on pleading fraud with particularity, nor do they meet the requirements of "the time, place and content" set forth in the *Mallaley* decision.

However, the existence of the statements or waivers is information that is exclusively in the hands of the Defendant. And, even though this information could have been sought prior to the deadline for filing the Complaint to determine dischargeability, the court will allow a short period for discovery and the filing of an amended Complaint. Therefore, the claims under Section 523(a)(2)(A) will be dismissed if they are not amended.

**V. 11 U.S.C. Section 523(a)(4).**

The Complaint alleges that Defendant-Debtors acted "in a fiduciary capacity and received

12

monies which were trust funds for suppliers and subcontractors", and that manner of their actions in expending and disbursing the funds "constituted conversions of money and property that should have been paid to [Plaintiff]". [Doc. # 25, ¶ 7]. Plaintiff argues that Defendants "committed a nondischargeable fraud and defalcation of funds and conversions of property which rightfully belonged to [Plaintiff]", and as such, the debt arising from such actions "cannot be discharged ...." [*Id.*].

Section 523(a)(4) provides that a discharge under 11 U.S.C. § 727 does not discharge an individual from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Based on the Complaint, it appears that Plaintiff asserts a claim "for fraud or defalcation while acting in a fiduciary capacity", as it does not allege embezzlement or larceny.

The Sixth Circuit has defined "defalcation" as "not only embezzlement and misappropriation by a fiduciary, but also the failure to account for such funds." *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir.2007). A defalcation renders a debt non-dischargeable "when the preponderance of the evidence establishes (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Id.*, *quoting, Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386 (6th Cir.2005) (internal quotation marks omitted).

In *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 133 S. Ct. 1754 (2013), the Supreme Court applied a "state of mind" requirement for defalcation under Section 523(a)(4). The Supreme Court explained:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). *See id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct

13

that a law-abiding person would observe in the actor's situation."

*Id.* at 1759-60 (italics in original).

Whether a party acted in a "fiduciary capacity" for purposes of § 523(a)(4) is determined by federal, not state law. *In re Blaszak*, 397 F.3d at 390. The Sixth Circuit construes "fiduciary capacity" as used in § 523(a)(4) more narrowly than the term is used in other circumstances. *Id.* In order to trigger the fraud or defalcation provision in that statute, a debtor must hold funds in a trust for the benefit of a third party. *Id.* (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). Furthermore, the types of trusts that will trigger the fraud or defalcation provision of § 523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.*

While the existence of a fiduciary relationship for purposes of § 523(a)(4) is determined by federal law, *Blaszak,* 397 F.3d at 390, the determination of whether an express or technical trust exists is governed by state law, *Chapman v. Pomainville (In re Pomainville)*, 254 B.R. 699, 702 (Bankr. S.D. Ohio 2000); *see Capitol Indemnity. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir.1985). In order to establish the existence of an express trust, a plaintiff must demonstrate (1) an intent to create a trust, (2) a trustee, (3) a trust res, and (4) a definite beneficiary. *Blaszak,* 397 F.3d at 391.

The Complaint appears to rely on the Michigan Trust Fund Act, which, as set forth in M.C.L.A. § 570.151, states:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

In *Astro Bldg. Supplies, Inc. v. Slavik*, 433 B.R. 651 (E.D. Mich. 2010), a contractor filed for Chapter 7 relief and a supplier brought an adversary proceeding against to except a debt from discharge on a fiduciary defalcation theory. The supplier sought to have the money owed to it from the contractor excepted from discharge, on the grounds that a trust under the Michigan Builders Trust Fund Act ("MBTFA") had been created. The *Astro* court, in finding that the supplier could

not establish the existence of a trust or a fiduciary relationship between it and the contractor, wrote that "to establish the existence of a trust . . . the plaintiff must identify both the specific project. . . and the specific payment received . . . ." *Id.* at 663. The Sixth Circuit subsequently affirmed the *Astro* decision. *Astro Bldg. Supplies, Ind. v. Slavik*, 443 Fed. Appx. 993, 994, 2011 WL 6157348, 2011 U.S. App. LEXIS 24690 (6th Cir. 2011)("[Plaintiff] has not shown that it provided materials to [Defendant] for a specific project. Instead, [Plaintiff] provided them to [Defendant] on an open account. That is simply not enough to create a trust under the [MBTFA]."); *see also*, *In re Patel*, 565 F.3d 963 (6th Cir. 2009); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608 (6th Cir. 2014).

The effect of the aforementioned statute imposes a trust, with the contractor operating as the trustee, upon the funds paid by any person in connection with a building contract. *Huizinga v. United States,* 68 F.3d 139, 144 (6th Cir. 1995). And, as the *Cousino* court stated, "from a purely legal standpoint, it is proper to equate a violation of the Michigan Builder's Trust Fund Act to that of a defalcation while acting in a fiduciary capacity as applied to § 523(a)(4)." *Behler-Young Co. v. Cousino (In re Cousino)*, 364 B.R. 289, 293 (Bankr. N.D. Ohio 2006).

But, as Defendant argues, the *Cousino* court, in evaluating claims by a Michigan supplier against an Ohio contractor and its principal, concluded that the Trust Fund Act did not apply to projects performed by an Ohio contractor in Ohio, on properties owned by residents of Ohio. *In re Cousino*, 364 B.R. at 294; *Dynasteel*, 750 F.3d at 614. Further, the *Cousino* court, in determining the Michigan legislature's intent in enacting the statute, found that the primary beneficiary of a trust in this instance must be a Michigan resident, or, a party having "close ties" to Michigan. Similarly, in *Dynasteel*, the Sixth Circuit held that "the purpose and structure of the [Michigan Builder's] Trust Fund Act contemplates the need for sufficient contacts between the parties' conduct and the State of Michigan", and concluded that "the Trust Fund Act requires sufficient contacts to the State of Michigan when it applies by its own force extraterritorially." *Id*. at 614-15.

In the matter at hand, a business located in Ohio, and owned by an Ohio citizen, purchased goods using a line of credit extended by what appears to be a Michigan-based company. Further benefitting the Defendant's Motion, it appears that Indoor Comfort purchased its goods from Plaintiff at Plaintiff's Toledo, Ohio location. Additionally, per the *Astro* court, Plaintiff did not allege that it provided materials to Defendant for a specific project that took place in Michigan.

15

However, the court cannot dismiss this claim completely, as it appears that a "close tie" to Michigan may exist. *Dynasteel*, 750 F.3d at 615. Plaintiff attached numerous invoices to its Complaint. [Doc. # 1, Pl. Ex. 2, p. 9-27]. In addition, Defendant attached a "Project List" to his Motion, that served as an attempt to identify the addresses that pertained to the numerous invoices attached to the Complaint. [Doc. # 34-3, Def. Ex. C, p. 1]. The "roselyn" Customer P.O. in Invoice # 601464 [Doc. # 25, Pl. Ex. 2, p. 15] matches the "Roselyn" invoice description in Defendant's Project List [Doc. # 34-3, Def. Ex. C., p. 1]. The Roselyn project has a "City & State" listed as "Temperance, MI." [*Id.*].

In construing the facts pleaded in the Complaint in a light most favorable to Plaintiff, it appears that one, or possibly more, of Defendant's projects may have taken place in Michigan, which could result in a finding of nondischargeability under the "close ties" *Dynasteel* description of the Michigan Builder's Trust Fund Act. The court cannot determine based upon the Complaint and the Motion which jobs, if any, took place in Michigan, and as such, will not grant Defendant's Motion as it applies to Plaintiff's Section 523(a)(4) claim.

## CONCLUSION

The Defendant's Motion to Dismiss [Doc. # 34] Plaintiff's Complaint, will be **GRANTED** in part and **DENIED** in part, as follows:

1) To the extent that the Complaint asserts any claims against Jill Rooks, any and all such claims are dismissed with prejudice; and

2) To the extent that the Complaint asserts any claim against Defendant Harold Leroy Rooks pursuant to 11. U.S.C. § 523(a)(2)(B), any and all such claims are dismissed with prejudice; and

3) To the extent that the Complaint asserts any claim against Defendant Harold Leroy Rooks pursuant to 11. U.S.C. § 523(a)(2)(A), specifically regarding any contractor's sworn statements and waivers of lien, any and all such claims will be dismissed with prejudice if an amended Complaint setting forth those allegations with specificity is not filed; and

4) To the extent that the Complaint asserts any claim against Defendant Harold Leroy Rooks pursuant to 11 U.S.C. § 523(a)(4), as it applies to any of Defendant's possible jobs/projects in Michigan as disclosed in the invoices attached to the Complaint, such claims survive Defendant's Motion; and

5) Plaintiff's request for an award of $2,000.00 as costs and attorney fees "suffered in having

to respond" to Defendant's Motion [Doc. # 35] be, and hereby is, **DENIED**; and

6) Plaintiff shall have thirty (30) from the date of this Opinion and Order to conduct limited discovery regarding contractors' sworn statements and waivers of lien. Should Plaintiff choose to file an amended Complaint based upon this discovery, it must be filed within fourteen (14) days after the thirty (30) day period has expired; and

6) In accordance with this Opinion and Order, Defendant shall file an Answer to the Complaint [Doc. # 25] within twenty-one (21) days from the date of this Opinion and Order. Defendant's answer is not required to address the § 523(a)(2)(A) claim regarding any contractor's sworn statements and waivers of lien. A pretrial scheduling conference will be held on this matter on **November 8, 2017 at 9:30 a.m.**

    **IT IS SO ORDERED.**

17-03007-jpg    Doc 39    FILED 09/28/17    ENTERED 09/28/17 15:40:00    Page 17 of 17